UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| QUITMAN MCBRIDE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 1:04CV116 RWS |
|  | ) |  |
| CARUTHERSVILLE SCHOOL DISTRICT, et al., | ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

## **MEMORANDUM AND ORDER**

Plaintiff Quitman McBride is a school counselor. He alleges in his Complaint that Defendants discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. He also asserts that Defendants violated his due process rights when his teaching contract was not renewed for the 2003-2004 school year. Defendants have moved for summary judgment. Because I find that Defendants did not violate McBride's rights under Title VII, I will grant Defendants summary judgment as to this claim. I will also grant Defendants summary judgment of McBride's due process claim because McBride did not have a property interest in continued employment in Defendants' school district.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex

Corp. v. Citrate, 477 U.S. 317, 323 (1986).  When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof.  Id. at 324.  In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy.  Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Employment discrimination claims are subject to summary judgment.  Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence.  In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).[1]

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination.  McDonnell Douglas, 411 U.S. at 802;  Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994).  If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  411 U.S. at 802.  The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture."  Id. at 510-11.  The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination.  Aucutt,  85 F.3d at 1316.  A rejection of the employer's proffered non-

---

[1] See  Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996)(applying McDonnell Douglas to an ADEA claim); Epps v. City of Pine Lawn, 353 F.3d 588, 591 (8th Cir. 2003) (applying McDonnell Douglas burden-shifting analysis to claims under the ADA and the MHRA).

discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

*Background*

Defendant Caruthersville School District (the "District)" is a school district located in Caruthersville, Pemiscot County, Missouri. Plaintiff Quitman McBride is an African American teacher. He was employed by the District in the junior and senior high schools as a counselor and as an at-risk counselor. McBride was employed by the District as a counselor for the 1998-1999 school year. He was employed by the District as an at-risk counselor for the next four school years 1999-2000, 2000-2001, 2001-2002, 2002-2003. McBride had previously been employed by the District from 1983-1986 as an art teacher.

McBride's 2002-2003 teacher's contract was a non-tenured contract contingent upon the "DFS TEAMs" funding from the State of Missouri. Defendant Olin Parks was the Superintendent of the District during McBride's employment. On March 27, 2003, Parks sent a letter to McBride which stated that the District would not renew McBride's contract for the 2003-2004 school year because the Missouri Senate had not allocated "TEAM" funding for the at-risk counselor position

held by McBride.

In light of his contract not being renewed, McBride asked if members of the District could write letters of recommendation on his behalf. Numerous school personnel, including Parks, provided McBride with letters of recommendation.

After his contract was not renewed, McBride did not apply for any other teaching positions in the District or elsewhere. On January 20, 2004, McBride filed a charge of employment discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights. McBride alleged that the District's termination of his employment and failure to continue his employment was motivated by discrimination based on race and retaliation. The EEOC issued a right to sue letter on May 27, 2004.

On August 31, 2004, McBride filed this lawsuit. He alleges that the District, Parks and members of the District's School Board[2] violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. He also alleges, presumably under 42 U.S.C. § 1983, that Defendants violated his right to due process under the Fourteenth Amendment to the United States Constitution because he was not afforded a pre or post-termination hearing when his teaching contract was not renewed. Defendants have moved for summary judgment.[3]

*Discussion*

In their motion for summary judgment Defendants assert that McBride has failed to establish a *prima facie* case of race discrimination and that he has failed to offer any evidence that the District's reason for not renewing his teaching contract was a pretext for discrimination. Defendants also assert that McBride was not a tenured teacher entitled to a hearing of the

---

[2] The School Board members at the applicable time were Arthur Taylor, Jean Dodd, P.G. Maners, Michael Hazel, Joe Parkinson, Roger Vanausdall, and Baughn Meredith.

[3] McBride also listed Matt Ruble as a named defendant in his Complaint. McBride has never made any allegations against Ruble in his Complaint or otherwise. Summary judgement on Ruble's behalf is appropriate because McBride has failed to state a claim against Ruble.

District's decision not to renew his teaching contract for the 2003-2004 school year.

In his response to Defendant's motion for summary judgment, McBride appears to have abandoned any claims he made under Title VII. He does not offer any facts or evidence of discrimination in opposition to Defendants' motion on those claims. His response is directed solely to the issue of whether he had attained tenure as a teacher and was entitled to a hearing regarding the non-renewal of his teaching contract.

McBride's Complaint alleges that Defendants violated Title VII when they refused to renew his teaching contract allegedly based on race and retaliation discrimination. Because McBride does not offer any direct evidence of discrimination his claim will be analyzed under the burden-shifting framework of McDonnell Douglas.

*Race discrimination*

To establish a *prima facie* case for a disparate treatment claim, McBride must show that: (1) he is a member of a protected class; (2) he was meeting the legitimate expectations as to his duties; (3) he suffered an adverse employment action; and (4) circumstances give rise to an inference of race discrimination because similarly situated employees, who were not members of the protected group, were treated differently. Gilooly v. Missouri Dept. of Health and Senior Services, 421 F.3d 734, 737-739 (8th Cir. 2005).

It is undisputed that McBride is a member of a protected group. He presumably suffered an adverse employment action in that his teaching contract was not renewed. The parties have not briefed the issue of whether McBride was meeting the legitimate expectations of the District as to his duties. McBride has not offered any evidence to show that a similarly situated non-African American teacher was treated differently than McBride.

As a result, McBride has failed to establish a *prima facie* case of discrimination based on race. Even if he did establish a *prima facie* case, Defendants have presented a legitimate, non-discriminatory reason for not renewing McBride's contract; his position as an at-risk counselor

was not funded by the State of Missouri for the 2003-2004 school year. McBride has not offered any evidence to create an inference that the District's proffered reason was a pretext for discrimination.

*Retaliation*

McBride also alleges in his Complaint that the District did not renew his teaching contract as a result of unlawful retaliation in violation of Title VII.

To establish a prima facie case of retaliation in violation of Title VII, McBride must show that he engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct. Putman v. Unity Health System, 348 F.3d 732, 737 (8th Cir. 2003)(quotations and citations omitted). Although contesting an unlawful employment practice is protected conduct, Title VII does not insulate an employee from discipline for violating the employer's rules or disrupting the workplace. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999). Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation. Id. McBride must also show that the District's legitimate, nondiscriminatory reason for its employment decisions was a pretext for retaliation. Putman, 348 F.3d at 737.

To demonstrate the presence of protected activity, a plaintiff must show a good faith reasonable belief that his employer engaged in a discriminatory employment practice. Sisico v. J.S. Alberici Construction Co., 644 F.2d 146, 150 (8th Cir. 1981).

In his Complaint McBride alleges that he was retaliated against for: (1) being "subeonaed to testify on behalf of another former black faculty member in a case against the" District; (2) for criticizing the treatment of black students; and (3) for filing a grievance against District Superintendent Olin Parks.

In his deposition McBride stated that he responded to a subpeona to testify in a case that Jim Gibson, a former teacher, had filed against the District. McBride did not know about any of

the particulars of that case but he was subpeonaed by Gibson's lawyer. On some undisclosed day in March 2002, McBride appeared in the courthouse in response to the subpeona. Superintendent Parks saw McBride in the courthouse and asked him what he was doing there. McBride told Parks that he was subpeonaed by Gibson's lawyer. Parks "made me know that, well, you work for Caruthersville School District and don't forget that." (McBride Depo. at 23) McBride was never called upon to testify in that case. He continued to be employed by the District for the 2002-2003 school year.

McBride has not offered any evidence that links Parks' comment to him in the courthouse in March 2002 with the District's notice to McBride a year later in March 2003 that his contract would not be renewed due to funding issues.

McBride asserts in his Complaint that he was retaliated against because he criticized the District's treatment of black students. McBride has failed to place any specific information about this claim into the record. Excerpts of his deposition filed in support of Defendants' motion for summary judgment reveal two incidents that McBride raised an issue about the treatment of black students. A male student was expelled for aggressive behavior toward a teacher. The date of this incident is not stated in the record. McBride attempted to get the student back into school. McBride alleges that Parks told him that he was not a team player because he was trying to get the student readmitted to the school.

The other incident concerns McBride's attempt to get the District to have a junior high school bus pick up a pregnant high school teen who lived outside the school bus boundary. The date of this incident is not stated in the record. Parks told McBride that it was an issue that McBride should not be involved.

These incidents are administrative issues between the District and its students. They do not concern an issue of employment discrimination that is addressed by Title VII and the Missouri Human Rights Act. McBride's attempt to help these students is not a protected activity under

employment discrimination laws. Parks' conduct of telling McBride to not be concerned with these two incidents is not a violation of a protected activity. McBride has failed to offer any evidence that links his trying to help these students, at some unspecified time, with the District's failure to renew his contract for the 2003-2004 school year.

McBride's third allegation of retaliation in his Complaint is based on a grievance that McBride allegedly filed against Parks at some unspecified time. In his deposition, McBride did not recall filing a grievance against Parks.

All of McBride's allegations concerning retaliation are not supported by any evidence. Even if they were the District has offered a legitimate reason for not renewing McBride's contract. McBride has failed to offer any evidence that the District's reason was a pretext for unlawful discrimination. As a result I will grant Defendants' motion for summary judgement on McBride's retaliation claim.

*Due process claim*

McBride asserts that in May of 2003 he requested a pre-termination hearing and a post-termination hearing on why his teaching contract was not renewed. The District did not provide McBride with any hearing. McBride asserts that he was a tenured/permanent teacher and as a tenured teacher he had the right to a hearing. Defendants assert that McBride was a probationary teacher who did not have such a right.

To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law. Hopkins v. Saunders, 199 F.3d 968, 975 (8th Cir. 1999). A protected property interest exists where a plaintiff has a "legitimate claim of entitlement" to a benefit that is derived from a source such as contract or state law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A plaintiff has a protected property interest in his employment if he can show "that he could have been fired only for good cause." Spitzmiller v. Hawkins, 183 F.3d 912, 916 (8th

Cir. 1999).

The State of Missouri, like most states, differentiates between a permanent/tenured teacher and a probationary teacher. Permanent teachers attain a property interest in their employment in the form of an "indefinite contract." Section 168.104 R.S.Mo.

A probationary teacher has a property interest in employment only for the remainder of the school year for which he has a contract. Smith v. King City School Dist. R-1 of Gentry County, 990 S.W.2d 643, 646 (Mo. Ct. App. 1998). A probationary teacher has no right to a renewal of his contract and no property interest in a renewal of his contract. Id.; see also Meyr v. Board of Ed. of Affton School Dist., 572 F.2d 1229, 1231 (8th Cir. 1978)(a probationary teacher, under Missouri law, has no property interest in continued employment). "To the contrary, in Missouri, a school board may refuse to renew the contract of a non-tenured teacher for any reason or no reason, as long as the non-renewal is not based on some ground impermissible under the Constitution." Smith, 990 S.W.2d at 646.

To attain a permanent teacher status a teacher must be "employed as a teacher in the same school district for five successive years and who has continued or who thereafter continues to be employed as a teacher by the school district...." Section 168.104(4) R.S.Mo. In other words, to achieve a tenured position a teacher must be employed five school years in a row and then be employed for a sixth successive year in the same school district.

A probationary teacher is any teacher "who has been employed in the same school district for five successive years or less." Section 168.104(5) R.S.Mo. If a probationary teacher "has been employed in any *other* school system as a teacher for two or more years, the board of education shall waive one year of his probationary period." Id. (emphasis added).

The undisputed facts in this case are that McBride was only employed for five successive years by the District and that his last contract for the 2002-2003 school year was a non-tenured contract. McBride was previously employed as a teacher for the District for three years from

1983 through 1986.

McBride asserts that his employment as a teacher in the District from 1983-1986 entitles him to a waiver of one year of his probationary period under section 168.104(5). Consequently, he argues, his fifth successive year of employment in the 2002-2003 school year bestowed him with the status of a permanent teacher under section 168.104(4). In support of his position, McBride claims that an amendment of section 168.104(4) in 1990 allowed McBride to apply his employment from 1983-1986 as a one-year credit to his probationary period.

The 1990 amendment granted part-time probationary teachers the right to accrue credit towards permanent teacher status on a prorated basis. The amendment simply allowed credit toward a permanent status to be achieved whether a teacher was full time or part time. It did not remove the requirement that the teacher must accumulate five *successive* years of teaching and then receive a contract for a sixth successive school year to achieve permanent status.

McBride's reliance on this amendment is without merit. Section 168.104(5) unambiguously only allows a one-year credit when the probationary teacher was employed in any *other* school system as a teacher for two or more years. Previous employment in the same school district does not qualify for the one-year credit. See Op. Atty. Gen. No. 92, Murray, 8-13-79 (phrase "employed in any other school system as a full-time teacher for two or more years" as used in subsection (5) of section 168.104 is clear and unambiguous and requires that only teaching experience gained in a school system other than one in which teacher is presently employed is the basis for waiving one year of teacher's probationary period).

McBride was clearly a probationary teacher when the District informed him in March 2003 that his contract would not be renewed for the 2003-2004 school year. A probationary teacher has no right to a renewal of his contract and no property interest in a renewal of his contract. Smith, 990 S.W.2d at 646. Because McBride did not have a protected property interest in his employment with the District he does not have a "legitimate claim of entitlement" to a

benefit that is protected by a right to due process. As a result, Defendants failure to provide McBride with a termination hearing did not violate his right to due process.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' motion to for summary judgment [#38] is **GRANTED**.

**IT IS FURTHER ORDERED that** Plaintiff's cross-motion for summary judgment [#42] is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 17th day of February, 2006.